J-S81032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: C.M.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.F.C., MOTHER | No. 562 MDA 2017 |

Appeal from the Decree February 27, 2017
in the Court of Common Pleas of Berks County
Orphans' Court at No.: 85285

BEFORE: PANELLA, J., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:          **FILED MARCH 08, 2018**

In these related appeals,[1] C.F.C. (Mother) appeals the decrees of the Court of Common Pleas of Berks County (trial court), entered on February 27, 2017, that terminated her parental rights to her daughter, C.M.C., born in September of 2013, and her other daughter, also C.M.C., born in February of 2015 (Children). We affirm.[2]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] This case is a companion case to No. 563 MDA 2017.

[2] The Children's father, J.M.E. (Father), voluntarily relinquished his parental rights on December 20, 2016. He did not appeal that termination and he is not a party to this appeal.

Berks County Children and Youth Services (BCCYS) filed their petitions to involuntarily terminate Mother's parental rights on February 7, 2017. The trial court held a hearing on that petition on February 27, 2017. When Mother failed to appear, counsel for BCCYS, Jennifer Grimes, and the guardian *ad litem*, Cathy Badal, moved for the admission of 38 exhibits that supported the petition and rested. The trial court admitted the exhibits.

This family has been known to BCCYS since 2016 for inappropriate parenting skills, physical abuse by Father, domestic violence between Mother and Father, Mother's unstable mental health, and Mother's ongoing alcohol and drug use. Notes of Testimony, February 27, 2017 (N.T.) at 481; Exhibit 38. On January 21, 2016, BCCYS received a report that the Children had welts on their buttocks and severe diaper rash. On January 21, 2016, Father admitted to the Pottstown Police Department that he hit the Children daily. Pottstown Code Enforcement closed Father's home because it lacked heat. On January 22, 2016, Father voluntarily signed a safety plan that allowed the Children to reside with maternal cousins and permitted Father only supervised contact.

On February 1, 2016, BCCYS obtained an emergency court order placing the Children in foster care when the maternal cousins said they were no longer willing to care for the Children. When the Children came into care, both of them were delayed developmentally. The eleven-month-old was immobile and not able to sit or crawl, while the three-year-old was unsteady on her feet

and at times would twitch when she got into trouble or got excited. N.T. at 494; Exhibit 38.

The trial court adjudicated the Children dependent on February 10, 2016, and transferred custody to BCCYS. The trial court ordered Mother to take parenting education classes; to undergo a drug and alcohol evaluation and follow any recommendations; to undergo random urinalyses; to secure a mental health evaluation and follow any recommendations; and to undergo a non-offending parent evaluation and follow any recommendations. The trial court also ordered Mother to establish and maintain stable housing and income and to keep BCCYS informed of any changes in her residence or income. Finally, she was to visit with the Children as scheduled and act in an appropriate manner.

Mother was minimally cooperative with services throughout the Children's placement, and made little to no progress in any of the services ordered by the trial court. Mother was discharged from casework services on November 29, 2016, for non-compliance. Natalie Farst, Mother's Signature Family Services Caseworker, opined that Mother's barriers to progress continued to be deflections of responsibility, failure to begin therapy, failure to obtain insurance as well as an inadequate monthly income. N.T. at 488; Exhibit 38. Mother failed to engage in any drug and alcohol evaluation and/or treatment. N.T. at 491; Exhibit 38. Mother participated in parenting education with Kathy Haag from Partners in Parenting and Morgan

Daubenspeck from KidsPeace. BCCYS acknowledged that Mother was consistent with visitation from February 1, 2016 until July 16, 2016, however, Mother's attendance declined after this review period. During the review period dating from June 6, 2016 to September 19, 2016, Ms. Haag voiced concern that Mother needed, "continual direction and guidance to carry out the teachings; especially when it comes to discipline." N.T. at 476; Exhibit 35. For the review period from September 20, 2016 until December 4, 2016, Ms. Haag opined, "[Mother] commonly struggles managing the [Children] even in a controlled, predictable environment." Mother missed five out of eleven visits during this review period and Ms. Haag suggested that Mother's visitation be decreased. N.T. at 479; exhibit 36. During this review period, Mother failed to attend any of the Children's medical appointments and failed to attend the Children's surgery for bilateral myringotomy with insertion of tympanostomy tubes. N.T. at 493; Exhibit 38.

On May 20, 2016, Mother submitted to a domestic violence and non-offending parent evaluation with Andrea Karlunas, MSW, LCSW, CDVC, CSOTS. Ms. Karlunas opined:

> Due to [Mother's] inability to maintain sobriety and use healthy coping skills, [Mother] is unable to protect herself and her children from violence. [Mother's] lack of insight that her own behaviors escalate the circumstances and place her at further risk and [does] not resolve the matter . . . based on [Mother's] own verbal report, she lacks the skills necessary to protect her children. Specifically, [Mother] lacks the skill necessary to identify abuse, characteristics of abusers and skills to protect children . . . . It is a concern that Mother lacks long-term sustainability to

remain sober, refrain from abusive relationships, and demonstrate healthy coping and parenting skills.

N.T. at 235, 236; Exhibit 29.

Ms. Karlunas expressed further concern with Mother's inability to recognize the abuse the Children suffered and does not have any confidence that Mother will be able to successfully parent the Children without first addressing the abuse, taking responsibility for not protecting them, and establishing trust with the Children. Ms. Karlunas also opined that Mother needed to understand the risks of reuniting with Father and demonstrate her role as a parent and protector. Ms. Karlunas recommended that Mother participate in non-offending parent psychoeducational sessions followed by non-offending parent treatment, a mental health evaluation, supervised visitation, parenting, and random urinalyses. N.T. at 236; Exhibit 29.

After Mother's evaluation, Mother engaged in non-offending parent treatment with Julie Karaisz, LSW, of Commonwealth Clinical Group. Mother attended four out of eleven sessions, fewer than fifty percent. Ms. Karaisz opined that Mother was never committed to the treatment process and needed to be in order to be able to develop the skills necessary to identify abuse and acquire an understanding of the risks of reunification with her Children's perpetrator. Mother was discharged from treatment in December of 2016 for non-compliance. N.T. at 491; Exhibit 38.

Mother submitted to a forensic evaluation by Richard F. Small, Ph.D., on May 24, 2016. Dr. Small diagnosed Mother with personality disorder with

histrionic and dependent features, bipolar disorder, unspecified anxiety disorder, alcohol-related disorder, unspecified stimulant-related disorder, posttraumatic stress disorder, and attention deficit/hyperactivity disorder, primarily hyperactive and impulsive presentation. N.T. at 225; Exhibit 28. Dr. Small opined, "[Mother's] poor choices are likely to negatively affect her ability to parent her children. If [Mother] were in a relationship in which her children were at risk, one could not be assured that she would protect them." Dr. Small further opined that Mother has a long-standing substance abuse disorder and that Mother's current sobriety is tenuous. N.T. at 225; Exhibit 28. Dr. Small concluded,

> Unfortunately, although [Mother] is aware that she has mental health problems, she has little insight into the seriousness of these problems, nor the consequences for her children. Long term intensive therapy would be necessary to make any significant change . . . [Mother] is unlikely to be able to be a safe caretaker for her children. Her psychological and relationship issues are so serious that they are likely to negate her ability to safely care for her children.

N.T. at 226; Exhibit 28 (brackets added here).

The trial court entered its decrees changing the Children's goals to adoption and involuntarily terminating Mother's parental rights on February 27, 2017. Mother filed her notices of appeal on March 29, 2017, and her concise statements of errors complained of on appeal on July 7, 2017.[3]

---

[3] When Mother failed to file her concise statements with her notices of appeal, this Court, on June 12, 2017, ordered Mother to file those

Mother raises the following questions on appeal:

A. Whether the trial court provided [Mother] with proper notice pursuant to 23 [Pa.C.S.A.] §2513(b) and 15.6 of the Berks County Orphans [Court] Division procedural rules[?]

B. Whether the evidence presented at trial courts' [sic] hearing supports a finding of the [trial] court granting termination of [Mother's] parental rights[?]

C. Whether the trial court erred by not addressing the emotional bonds developed between [mother and Child] prior to terminating [Mother's] parental rights[?]

Mother's Brief, at 3 (unnecessary capitalization omitted).

Our standard of review in the termination of parental rights is as follows:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Regarding out review of termination decrees, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

---

statements. Mother filed those statements with this Court on June 19, 2017, and with the trial court on July 7, 2017. Failure to file a concise statement with a notice of appeal can result in the waiver of the issues raised on appeal. However, as there was no objection or claim of prejudice from Appellee, we have accepted the late filings in these cases in reliance on our decision in *In re K.T.E.L.*, 983 A.2d 745 (Pa. Super. 2009).

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

Our standard of review of a change of a child's goal is as follows:

When we review a trial court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion. In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record. We are bound by the trial court's findings of fact that have support in the record. The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial court's findings are supported by competent evidence of record, we will affirm even if the record could also support an opposite result.

*Int. of S.G.*, 922 A.2d 943, 946-47 (Pa. Super. 2007).

The trial court terminated Mother's and Father's parental rights pursuant to 23 Pa.C.S.A. §§2511(a)(2), (5), (8), and (b). In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear

conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004). Further,

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In the Interest of K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (internal citations omitted).

The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975). There the Pennsylvania Supreme Court announced under what is now Section 2511(a)(2), that the petitioner for involuntary termination must prove "[t]he repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by the parent." *Id.* at 173.

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond. *See In re E.M.*, 533 Pa. 115,

620 A.2d 481 (1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. *In re K.K.R.-S*., 958 A.2d 529, 533 (Pa. Super. 2008).

In its opinion, the trial court notes, and we agree, that Mother has waived the issues she raises on appeal by failing to appear at the termination hearing on February 27, 2017. Mother claims, however, that she was not properly served with notice of that hearing. We disagree and quote the trial court's analysis of this issue, with approval:

> Mother has waived any issues she could have raised by failing to appear for her termination hearing. [*See Fillmore v. Hill*, 665 A.2d 514, 516 (Pa. Super. 1995) ("Failure to timely object to a basic and fundamental error . . . will result in waiver of that issue. On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected.] Mother now asserts that it was trial court error by failing to adequately notify mother of the time, date, and location of the termination hearing. Despite appearing before this [c]ourt, in person, on July 10, 2017, Mother did not raise this issue at the first available opportunity or attempt to offer this [c]ourt any good cause for her failure to appear on February 27, 2017 [*Fillmore*, *supra*]. The preliminary order, entered February 10, 2017, set for termination [sic] for February 27, 2017 at 9:30 am [sic] in the courtroom assigned to the undersigned. Proof of notice was by sworn affidavit and filed in the official court file, the United States Postal service delivery information was attached thereto and shows that mother signed for the Petition, Preliminary Order and notice on February 16, 2017 at 12:53 P.M. in Boyertown, PA, which was eleven days before the hearing. The record shows that notice of the termination hearing was also published in the Reading Eagle, a newspaper of general circulation for the area in which Mother resides, and that said notice was also mailed to Mother via regular mail. (Notes of Testimony 2/27/17, p. 3.)

Trial Court Opinion, 7/24/17, at 6-7.

Our examination of the record discloses that it contains a Proof of Notice filed with the trial court on February 23, 2017, that states that BCCYS served notice of the hearing on Mother on February 13, 2017 by regular and certified mail. Attached to the Proof of Notice is the United States Postal Service receipt that demonstrates that Mother personally signed for that notice on February 16, 2017 at 12:53 p.m. at her address of record. Mother had proper notice of the petition and the date, time and place of the hearing. Mother's first issue lacks merit.

In regard to Mother's other two issues, we have carefully examined the opinion entered by the trial court on July 27, 2017, in light of the record in this matter and are satisfied that that opinion is a thorough and correct analysis of this case. Accordingly, we affirm the decrees of the Court of Common Pleas of Berks County that terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(2) and (b), and changed the Children's goal to adoption, on the basis of the concise, thoughtful, and well-written opinion of the Honorable Jill Gehman Koestel.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/08/2018

IN RE: : IN THE COURT OF COMMON PLEAS OF

: BERKS COUNTY, PENNSYLVANIA

C.M.C. and   C.M.C. : ORPHANS COURT

: Nos. 85284 & 85285

Appeals of C.F.C., Mother : Superior Court No.  562 MDA 2017 &

: 563 MDA 2017

Jennifer Grimes, Esquire, Attorney for Berks County Children & Youth Services

Cathy Badal, Esquire, Guardian Ad Litem

Chenille M. Truitt, Esquire, Counsel for Appellant/Mother/Appellant C.F.C.

**AMENDED MEMORANDUM OPINION**, Koestel, J., _____ July ᴣ Ɏᵗʰ 2017.

Before the court are Appellant/C.F.C.'s [1] (hereinafter "Mother") appeals of the Decrees of February 27, 2017 which involuntarily terminated her parental rights to C.M.C., date of birth September 17, 2013 and C.M.C. (hereinafter referred to as "Children"), date of birth February 8, 2015. Berks County Children & Youth Services (BCCYS) filed its Petitions for Involuntary Termination of Parental Rights on February 1, 2017, on grounds set forth in 23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (8). Hearing on both petitions was held on February 27, 2017. Despite receiving notice of the hearings by certified mail, return receipt requested, and having signed for the notices of hearing and scheduling orders, Mother did not appear at the hearings. The Final Decrees, which terminated Mother's parental rights to her two Children, were entered on that date. On March 28, 2017, Mother, through counsel, filed Notices of Appeal to Superior Court.

Mother had not filed or served this Court with a concise statement of the errors complained of on appeal, in either case, as required under Pa.R.A.P. 1925(a)(2)(i)

---

[1]  Birthfather signed consents on December 20, 2016; his parental rights have been terminated and he is not a party to this appeal.

1



(explaining that in children's fast track appeals, "[t]he concise statement of errors complained of on appeal shall be filed and served with the notice of appeal required by Rule 905") (emphasis added). Nor did she secure the transcripts. On July 5, 217, the Superior Court remanded this matter for a determination of whether counsel has abandoned Mother or whether Mother intended to proceed *pro se*. In response, we held a hearing on July 10, 2017, where it was determined that neither situation has occurred. Inexperienced counsel has since remedied her errors and this matter should be given a new briefing schedule.

Mother served the Court with an Amended Concise Statement on July 20, 2017. Mother now asserts that:

a. "The Trial Court erred by failing to adequately notify Appellant of the time, date and location of the termination hearing.

b. The Trial Court erred in terminating mother's parental rights when there was insufficient evidence to support a finding of the court's granting termination.

c. The trial court erred by not addressing the emotional bonds that developed between the child and the Appellant."

The standard of review in termination of parental rights cases is well settled:

> "...[it] requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously

2

emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings."

*In re T.S.M., 71 A.3d 251, 267 (Pa.2013)(citations and quotation marks omitted).*

The party petitioning for termination "must prove the statutory criteria for that termination by at least clear and convincing evidence." *In re N.A.M., 33 A.3d 95, 98 -99 (Pa.Super.2011)(citations omitted).* Clear and convincing evidence is defined as "testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Id. (citation omitted).* As the ultimate trier of fact, the Orphans' Court is empowered to make all determinations of credibility, resolve conflicts in the evidence, and believe all, part, or none of the evidence presented. *Id. (citation omitted).*

The Petitions for Involuntary Termination of Mother's Rights in the present cases are both based upon the following sub-sections of 23 Pa.C.S.A. §2511:

SUBCHAPTER B. INVOLUNTARY TERMINATION

## §2511. Grounds for involuntary termination

**(a) General rule.**-The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence

3

necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*\*\*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with the agency, 12 months or more have elapsed from the date of the removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 PA. CONS. STAT. § 2511, (a)(1), (2), (5) & (8).

The Court applies a two-part test when determining whether parental rights should be terminated. In *In re L.M.*, 923 A.2d 505 (Pa. Super. 2007), the Superior Court described the test as follows:

"Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant

4

to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond."

*Id.* at 511 (*internal citations omitted*).

BCCYS asserts in its petitions that these alleged facts support the aforementioned grounds for termination:

a. Mother has failed to remediate her substance abuse.
b. Concerns remain regarding Mother's mental health.
c. Concerns remain regarding issues of domestic violence.
d. The inability of mother to appropriately parent the child[ren].

BCCYS has established the grounds for termination under several of the subsections of Section 2511(a). The grounds for terminating parental rights under Section 2511(a)(2) have been met; these grounds are not limited to affirmative misconduct. To the contrary, these grounds may include, *inter alia*, incapacity to perform parental duties. *In re A.L.D., 797 A.2d 326, 337 (Pa.Super.2002)*. Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *Id.* at 340.

It was in *In re Geiger, 331 A.2d 172 (Pa.1975)* that our Supreme Court first announced the fundamental test in terminating parental rights pursuant to section 2511(a)(2). According to *Geiger*, three things must be shown before a natural parent's rights in a child will be terminated:

5

(1) repeated and continued incapacity, abuse, neglect or refusal must be shown; (2) such incapacity, abuse, neglect or refusal must be shown to have caused the child to be without essential parental care, control or subsistence; and (3) it must be shown that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*Id. at 173–174; See also In re C.D.R., 111 A.3d 1212, 1216 (Pa.Super.2015)(citation omitted).*

"[I]f a parent fails to cooperate [with services] or appears incapable of benefiting from the reasonable efforts supplied over a realistic period of time... the termination petition may be granted." *In the Interest of Lilley, 719 A.2d 327, 332 (Pa. Super. 1998) (citation omitted).* "Regardless of inability or refusal, once a parent demonstrates a failure to fulfill his or her parental duties, the child's right to fulfillment of his or her potential in a permanent, healthy, safe environment with proper parenting supersedes the parent's basic constitutional right to custody and rearing of the child." *In re B.L.W., 843 A.2d 380, 388(Pa.Super.2004).*

Mother has waived any issues she could have raised by failing to appear for her termination hearing. Mother now asserts that it was trial court error by failing to adequately notify Mother of the time, date and location of the termination hearing. Despite appearing before this Court, in person, on July 10, 2017, Mother did not raise this issue at the first available opportunity or attempt to offer to this Court any good cause for her failure to appear on February 27, 2017. The Preliminary Order, entered February 10, 2017, set for termination for February 27, 2017 at 9:30 am in the courtroom assigned to the undersigned. Proof of notice was by sworn affidavit and filed in the official court file. The United States Postal Service delivery information was

6

attached thereto and shows that Mother signed for the Petition, Preliminary Order and Notice on February 16, 2017 at 12:53 p.m. in Boyertown, PA, which was eleven days before the hearing. The record shows that notice of the termination hearing was also published in the Reading Eagle, a newspaper of general circulation for the area in which Mother resides, and that said notice was also mailed to Mother via regular mail. (Notes of Testimony, 2/27/17, p. 3). Mother had adequate notice of the petition and the date, time and place of the hearing. This issue lacks merit.

These two children, ages 28 months and 11 months, came to the attention of BCCYS on January 21, 2016, when the agency received a report that both children had welts on their buttocks and that one of the children had a severe diaper rash. It appeared that the marks on the children's bodies were made by a belt. Both children were nonverbal and developmentally delayed. Mother had been admitted into inpatient treatment for suicidal ideation and drug abuse; the children were left in the care of birthfather. Birthfather admitted that he hit the children and the report of child abuse was indicated. (Exhibits 4; 6; 7; 10 & 15). Birthfather signed a safety plan in which the children would reside with maternal cousins and all of his contact would be supervised. (Exhibit 10). After that situation fell apart, three weeks later, on February 1, 2016, the children were placed into foster care by emergency order. (Exhibit 11).

There was a significant history of domestic violence between the parties. Mother had pulled birthfather's hair out of his head during an altercation, causing an open, bleeding cut, so she was charged criminally; birthfather obtained a Protection from Abuse (PFA) order. Mother later violated the PFA. (Exhibit 9).

7

Both children were adjudicated dependent and taken under the care of the Court. (Exhibits 17 & 18). Mother was court ordered to cooperate with, *inter alia*, parenting education, a mental health evaluation and any recommended treatment, a domestic violence evaluation and any recommended treatment, a drug and alcohol evaluation and any recommended treatment, random urinalysis, and maintaining stable appropriate housing and income.

One month after placement, birthfather agreed to dismiss the PFA against Mother and Mother reconciled with him, despite birthfather being indicated for physical abuse on both of her children, as well as birthfather's severe neglect of her youngest child during Mother's absence from the home. Mother minimized birthfather's abuse of her children, rationalizing that he just "spanked" them. Mother was evaluated by Dr. Richard Small, who opined back in May 2016 that, at that time, Mother was unlikely to be able to be a safe caretaker for her children because of her psychological and relationship issues. (Exhibits 21; 28). Mother's sobriety remained tenuous during this review period. She has a tendency to relapse. Mother has serious mental health issues, including bipolar disorder and a significant personality disorder. Mother makes poor relationship choices that negatively affect her ability to parent her children. Mother has little insight into the seriousness of these problems or the consequences for her children. Dr. Small opined, "At this time, [Mother] is unlikely to be able to be a safe caretaker for her children. Her psychological and relationship issues are so serious that they are likely to negate her ability to safely care for her children." (Exhibit 28, page 6). . The agency and the Court have no assurance that Mother would protect her children.

Over the last year, nothing with Mother has changed since Dr. Small made his evaluation in May of 2016. Mother failed to comply with her sessions with the caseworker at Signature Family Services and was discharged because of lack of progress and failure to attend most of her sessions. (Exhibit 26). Mother also failed to attend half of her recommended sessions with Commonwealth Clinical Group and was unsuccessfully discharged. (Exhibits 29 & 30). Mother's psychotherapist reported that Mother was resistant to the treatment process despite the fact that she needs to develop skills to identify abuse and acquire insight and understanding of the risks of reunification with her children's perpetrator. (Exhibit 30). Mother did not participate in the recommended drug and alcohol treatments.

Mother's visits with the children went well in the beginning, but then she missed visits and refused to take any responsibility for why that happened. Mother had issues with discipline techniques, even though they were reviewed with her at every visit. It was recommended throughout that the visits remain supervised. One of the visits was cancelled by birthfather by text message, alleging that Mother was using meth and heroin. (Exhibit 37). This is further indication of Mother's tenuous grasp on sobriety. Mother's significant history of drug and alcohol abuse, and lack of treatment, makes it clear to this Court that Mother will relapse.

BCCYS established, by clear and convincing evidence, that Mother failed to fulfill her parental duties, that she is incapable of parenting her children and that she is also incapable of keeping her children safe because of her mental health issues, substance abuse and poor relationship choices. (Exhibits 1-38). Mother's issues have caused her

children to be without essential parental care and control. Despite intervention and proffered services, the causes of Mother's incapacity will not be remedied any time soon.

"Following the hearing to determine if the parent's behavior warrants termination of his or her parental rights, the court must consider whether the termination will clearly promote the welfare of the child." *In re: B.L.L., 787 A.2d 1007, 1013 (Pa.Super.2001).* "A parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the parent's failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *Id.* Above all else in determining whether parental rights should be terminated, adequate consideration must be given to the needs and welfare of the child. *In re Child M., 452 Pa.Super. 230, 681 A.2d 793 (1996), appeal denied, 546 Pa. 674, 686 A.2d 1307 (1996).*

We find that termination of Mother's parental rights will have no detrimental effect on her children, in part, because they are very young, but also because Mother could not maintain sobriety or put the needs and safety of her children above those of a paramour. While the children were happy to see Mother during the supervised visits, Mother herself acknowledged that there is no real bond with her children because she was not able to see them for six months, due to the PFA violation, and because she had limited contact with them after they were placed. (Exhibit 28, page 3). Mother now asserts in her concise statement that a bond exists that must be considered.

The Supreme Court has made it clear that the Courts must consider the damage caused to a child if bonds to biological parents, who have been proven incapable of parenting, are left intact. *In re: T.S.M., supra.* Severing any alleged parental bond with

10

Mother best serves the needs and welfare of her children. The children have progressed significantly in their development since they have been in placement. Both children are very attached to their foster mother and foster grandmother, more so than with Mother or birthfather. (Exhibit 33, page 60). Mother resents when her children call the foster mother "mom," a situation that may impede her children's ability to attach to a pre-adoptive family who can provide needed care and stability. (Exhibit 28, page 3). We find that any bonds that may exist between Mother and these children are not necessary or beneficial to their well-being. Severing such bonds would not cause the children psychological harm, and in fact, may prevent Mother's interfering with the children's bond with their foster family.

These children have been in placement for well over a year. They are attached to their foster family and look to them to have all their needs met. They call their foster parents "mom" and "dad." (Exhibit 38). Both are doing well in their foster home, and both have made significant improvements developmentally. The needs and welfare of these abused children are best met by the foster parents in a safe and stable home. They deserve a chance for a normal life. By this decision, we "keep the ticking clock of childhood ever in mind," as we must. *T.S.M.* at 269.

We respectfully request that the Superior Court affirm the Decrees entered on February 27, 2017, that terminated Mother's parental rights to her children.

By the Court:

Jill Gehman Koestel, J.

7/24/17 _____, Certified Copy of Amended Memorandum Opinion issued to Counsel of Record and/or Unrepresented parties being J. Games, GAL & C. Truitt, Esq by first class mail by Register of Wills. & inter-office Lisa A. Hartline